UNITED STATES of America, Plaintiff-Appellee,

v.

Salvatore J. CEFALU, also known as Sam Cefalu, Samuel A. Librizzi, also known as Sam Librizzi, and August Palmisano, Defendants-Appellants.

No. 14548.

United States Court of Appeals Seventh Circuit.

Oct. 27, 1964.

Dominic H. Frinzi, Nicholas C. Catania, James M. Shellow, Milwaukee, Wis., Shellow & Shellow, Milwaukee, Wis., of counsel, for appellants.

James B. Brennan, U. S. Atty., William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Defendants were jointly charged in a federal grand jury single-count indictment with accepting taxable wagers during the period January 1, 1962 to March 22, 1962 within the meaning of § 4401, Title 26 U.S.C.A.,[1] and with failing to pay a special occupational tax thereon (wagering tax stamps) as provided by § 4411, Title 26 U.S.C.A.,[2] in violation of § 7262, Title 26 U.S.C.A.[3]

Following a trial to the court, without a jury, each defendant was found guilty and ordered to pay a fine within the limits fixed by the statute. Defendants appeal from the judgments of conviction and the penalties imposed. They raise two issues on this appeal.

■■ Defendants Cefalu and Librizzi charge prejudicial error arising from a denial of their pre-trial motion to dismiss the indictment because of their appearance as witnesses before the grand jury which subsequently indicted them and defendant Palmisano.

It appears from their affidavits filed in support of their motion to dismiss and from the record that on March 6, 1962 they were ordered to appear before the Captain in charge of vice of the Milwaukee Police Department at 9:00 a. m.; they did so appear and were told to wait there; they waited until 11:15 a. m., at which time they were served with a subpoena to appear before a grand jury which had been called for the purpose of investigating gambling activities in the Eastern District of Wisconsin.

Cefalu and Librizzi appeared at the grand jury room and were called about 5:00 p. m. that day. They were represented by counsel. When they appeared

1. "§ 4401. Imposition of tax
"(a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.
  *     *     *     *     *
"(c) Persons liable for tax.—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. * * * Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him."

2. "§ 4411. Imposition of tax
"There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."
The next succeeding section (§ 4412) in pertinent part reads:
"§ 4412. Registration
"(a) Requirement.—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—
"(1) his name and place of residence;
"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and
"(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each person.
  *     *     *     *     *

3. "§ 7262. Violation of occupational tax laws relating to wagering—Failure to pay special tax
"Any person who does any act which makes him liable for special tax under subchapter B of chapter 35 without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000."

before the grand jury, they were each advised of their constitutional right to refuse to answer any question that might tend to incriminate them. Each defendant claimed his rights under the Fifth Amendment and, except to state his name, address, occupation and where he attended school, refused to testify before the grand jury.

On March 21, 1962, Special Agent Curran of the Federal Bureau of Investigation filed a sworn complaint before a United States Commissioner charging all three defendants with violations of 26 U.S.C.A. § 7262, supra. Warrants were issued. They were arrested the next day and released on bail. On March 30, 1962, they were granted a reduction of bail.

On March 30, 1962, the grand jury returned the instant indictment against the three defendants.

Following a hearing on December 21 and 26, 1962, the motion to dismiss filed by Cefalu and Librizzi was denied.[4]

Defendants assert (in their affidavits) that they have reason to believe that on the same day they were subpoenaed to appear before the jury that other witnesses appeared and gave testimony concerning alleged gambling activities of defendants. They contend that the ultimate constitutional question is whether at the time of their compelled attendance they were *probable* defendants or merely *potential* defendants, citing United States v. Keenan, 7 Cir., 267 F.2d 118 (1959).

Under the circumstances present in the instant case, we deem this distinction, however it might be resolved, to be unimportant. Defendants were represented by counsel. They were admonished concerning their constitutional rights. They elected to invoke the privilege and refused to testify. They exercised the "option of refusal" guaranteed by the Fifth Amendment and gave no testimony concerning the subject under inquiry or related to the subsequent indictment.

We find no authority to support defendants' claim that their compelled appearance before the grand jury, under the particular circumstances present here, was violative of Fifth Amendment rights requiring a dismissal of the indictment.

There is overwhelming authority to the contrary. The underlying rationale of these authorities is that the privilege accorded one called before a grand jury is the election to refuse to give testimony which might tend to show he had committed a crime. It is not designed to effect a prohibition against inquiry by an investigative body.[5]

We hold that the district court did not err in denying defendants' motion to dismiss the indictment.

The second issue raised by defendants is whether, in view of the enactment of 18 U.S.C.A. §§ 1952 and 1953,[6]

---

4. The hearing and denial of the motion to dismiss were before Honorable F. Ryan Duffy, Circuit Judge of the Seventh Federal Circuit, presiding at the time by designation to hold a District Court in the Eastern District of Wisconsin.

5. See United States v. Cleary, 2 Cir., 265 F.2d 459 (1959), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548; United States v. Pile, 7 Cir., 256 F.2d 954, 956 (1958); Connelly v. United States, 8 Cir., 249 F.2d 576, 581 (1957), cert. denied, 356 U.S. 921, 78 S.Ct. 700, 2 L.Ed.2d 716; United States v. Benjamin, 2 Cir., 120 F.2d 521, 522 (1941); O'Connell v. United States, 2 Cir., 40 F.2d 201, 205 (1930), appeal dismissed, 296 U.S. 667, 51 S.Ct. 658, 75 L.Ed. 1472; United States v. Scully, S.D.N.Y., 119 F. Supp. 225, 227 (1954), affirmed, 2 Cir., 225 F.2d 113, 116, cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788; United States v. Manno, N.D.Ill., 118 F.Supp. 511, 516–517 (1954); United States v. Price, S.D.N.Y., 163 F. 904, 906–907 (1908), affirmed Price v. Henkel, 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581; 8 Wigmore, Evidence § 2268, p. 402 (McNaughton Rev. 1961); Orfield, The Federal Grand Jury, 22 F.R.D. 343, 430–432 (1959).

6. "§ 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

    *        *        *        *        *

"(3) otherwise promote, manage, establish, carry on, or facilitate the promo-

the registration and occupational tax provisions of the tax on wagers, supra, compel the disclosure of incriminating information and are thus violative of the privilege against self-incrimination guaranteed by the Fifth Amendment to the federal Constitution.

We feel our recent decision in United States v. Zizzo, 7 Cir., 338 F.2d 577 (October 19, 1964) to be dispositive of this issue.

In Zizzo, one defendant registered as required by 26 U.S.C.A. § 4412. The registration was admitted in evidence and defendants were convicted of violations of 18 U.S.C.A. §§ 1952 and 1953. Defendants argued there that since they were required by law to register, the use of this registration as evidence violated the privilege against self-incrimination. Judge Duffy, speaking for the court, in rejecting this argument quoted from Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 99 L.Ed. 475 (1955) as follows: " 'If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment.' " United States v. Zizzo, supra, 338 F.2d at 581.

Section 1952 prohibits travel in interstate commerce with the intent to, *inter alia*, promote gambling and thereafter performing or attempting to perform an act to promote gambling.

Defendants in the instant case attempt to distinguish Zizzo and Lewis on the ground that the very act of registration is performing an act to promote gambling. Defendants cite Communist Party of United States v. United States, D.C. Cir., 331 F.2d 807 (1964) in support of this proposition.

Defendants contend that if they have traveled in interstate commerce with the intent to promote gambling and thereafter register pursuant to 26 U.S.C.A. § 4412, the act of registering is an act which completes the crime proscribed by Section 1952. We do not agree.

The act of registering is merely a statement of future intent. It is not in itself an act, which promotes or otherwise facilitates gambling, within the meaning of Section 1952.

This case is unlike Communist Party, where " 'the act of registering is necessarily incriminating whether or not any information other than the registrant's name is supplied * * *.' " Id. at 813, quoting from Russell v. United States, 9 Cir., 306 F.2d 402, 410 n. 16 (1962).

We hold that the act of registering as required by 26 U.S.C.A. § 4412 is not an incriminating act contemplated by 18 U.S.C.A. § 1952 and, based upon our holding in Zizzo, the act of registering does not violate the Fifth Amendment since the registrant may freely choose whether to subsequently engage in the unlawful activities proscribed by 18 U.S.C.A. § 1952.

The judgment appealed from is affirmed.

Affirmed.

---

tion, management, establishment, or carrying on, of any unlawful activity.

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * *."

*  *  *  *  *

"§ 1953. Interstate transportation of wagering paraphernalia

"(a) Whoever, except a common carrier in the usual course of its business, knowingly carries or sends in interstate or foreign commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in (a) bookmaking; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game shall be fined not more than $10,000 or imprisoned not more than five years or both. *  *  *  *"