**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Silvio J. IRALI, Defendant-Appellant.**

**No. 73–1640.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1973.

Decided Sept. 12, 1974.

George J. Cotsirilos and S. Jack Micheletto, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Ann P. Sheldon, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and POOS, Senior District Judge.[1]

SWYGERT, Chief Judge.

Defendant-appellant Silvio J. Irali was indicted on two counts, extortion in violation of 18 U.S.C. § 1951 (Hobbs Act) and making a false declaration before the grand jury in violation of 18 U.S.C. § 1623. He was convicted on both counts after a jury trial and received consecutive one-year sentences.

In October 1969 Mrs. Geraldine Svedman (whose name was Geraldine Zaczynski at the time) purchased a tavern at 4932 West Armitage in Chicago which she named Gerri's Lounge. After borrowing $2500 from her mother, she made an initial downpayment of $1500 and agreed to pay the balance of the $2500 price in monthly payments of $135.

Concurrently with her purchase, Mrs. Svedman went to the Shakespeare Avenue Police Station and filled out a liquor license application. Police Officer Greenwich assisted her. She then went to the city hall, filed the application, and paid her fee. Officer Greenwich was assigned to investigate Mrs. Svedman's application, and she had to return to him with additional information between ten and fifteen times before the license was finally approved.

On November 8, 1969 Mrs. Svedman was in another tavern with her future husband when they struck up a conversation with defendant Irali. They told him of the delay in obtaining a liquor license. He said that he was a clerk in City Hall and that he might be able to help her. (At the time, Irali was a principal clerk in the liquor license department of the City Collector's office.)

Irali asked for the name of the license officer. Mrs. Svedman said that it was Greenwich. He said he knew Greenwich and could find out what was causing the delay. He gave her his office telephone number and asked that she call him in a few days. When she called two days later, Irali said that he had not contacted Greenwich and asked her to call back. Two days later she called again with Dennis Svedman, her husband, listening on an extension and asked if Irali had spoken to Officer Greenwich. Irali said that, "Greenwich wanted $500 for his troubles." Mrs. Svedman said that it was "ridiculous" and that she did not "have that kind of money." Mrs. Svedman testified that Irali said "that because he was a friend of [hers], he would talk to Officer Greenwich again, but that all the license officers down there, that's the way they do things." She further testified that he stated "that Greenwich was a hardnose and he wouldn't waive any money" and that he would try talking to Greenwich again.

On November 17, 1969 Mrs. Svedman called the defendant and asked if her license had been approved. He said that Greenwich wanted $250. She said that she did not have that kind of money. Irali replied that he would see if there was anything he could do. After the

1. The Honorable Omer Poos, Senior Judge of the United States District Court for the Southern District of Illinois, is sitting by designation.

telephone conversation, she told her husband, who had again been listening to the conversation on the telephone, that she thought she would have to pay the money or she would never be able to open her tavern. On November 19, 1969 she called the defendant and asked if he had spoken with Greenwich. Irali asked her if she could come up with $100 or $150. She told him that she would talk to her mother. After her mother agreed to lend her $150, she called Irali. He said that he would check with Greenwich and call her back. Later that day Irali called her and said that Greenwich would take the $150. The next day she went to the bank with her mother who withdrew $150 and gave the money to Mrs. Svedman. They then went to the city hall accompanied by Dennis Svedman where Mrs. Svedman gave Irali the $150. Irali told them, "For sure, you will get your license now." She received her license five days later and immediately opened her tavern for business.

The evidence established that Mrs. Svedman purchased liquor for her tavern from three Illinois distributors who had purchased their supplies from out of state.

To prove the false declaration count, the Government introduced the grand jury transcript of Irali's testimony in which he denied having ever received $150 from Geraldine Zaczynski Svedman in connection with the issuance of her liquor license.

## I

The defendant contends there was no proof that the commerce was of an interstate character, that commerce was affected by the extortion demand, and that the Hobbs Act was not meant to reach "low level local matters" such as a $150 payoff.

■ The first contention is based on an argument that the liquor sold to Gerri's Lounge had come to rest in Illinois before its sale and distribution and thus was no longer part of interstate commerce. We have rejected that argument in three recent decisions. United States v. Pacente, 503 F.2d 543 at 549–550 en banc (7th Cir. 1974); United States v. DeMet, 486 F.2d 816, 821–822 (7th Cir. 1973); United States v. Gill, 490 F.2d 233, 236–237 (7th Cir. 1973).

■ The second contention is that there was no direct proof that the victim of the extortion, Geraldine Svedman, suffered any loss in her ability to transact business by the payment of such a nominal amount and that it would be unreasonable to infer such fact from the evidence. The costs of doing business affect all profit-oriented business. Here, since (1) the victim had to borrow money to open the business, (2) the original extortion demand was twenty percent of the purchase price of the tavern, and (3) the amount actually paid was more than her monthly payment for the business, it was not unreasonable to infer that such an illegal cost affected her ability to do business. In any event, the Hobbs Act prohibits affecting commerce "in any way or degree" whether it forces the victim to close or only impedes his ability to conduct business.

The jury could also have inferred from the evidence that the victim would not have been able to open her doors for business if she had not paid the money since Irali and especially Officer Greenwich were in positions to delay and possibly bring about the rejection of her liquor license. Any purposeful delay would have affected interstate commerce through unconsummated purchases and sales since Gerri's Lounge could not do business without the license.

■ The defendant also contends that the Hobbs Act was not meant to encompass the amount involved $150. In *Gill* it was $300 and in *DeMet* the sum was about $150 in cash and $300 worth of liquor. The court rejected the same de minimis argument in the latter two cases.[2] (The author of this opinion pointed out in his concurrence in DeMet, 486 F.2d at 822–823, that there appears

---

2. The issue was not raised in Pacente where the sum was $200.

to be no minimum limit to the reach of section 1951 and that he had registered his objection in United States v. Amabile, 395 F.2d 47, 54 (7th Cir. 1968), cert. denied, 401 U.S. 924, 91 S.Ct. 869, 27 L.Ed.2d 828 (1971).)

## II

■ The defendant contends that the verdict was not supported by the evidence in that the jury in returning a "verdict impliedly [gave] credence to the testimony of witnesses who [were] admitted liars, whose testimony [was] bloated with inaccuracies and internal inconsistencies and whose past histories cast great doubt on their honesty" whereas the "defendant was a completely candid and truthful witness." Thus this court is invited to review the jury's resolution of the credibility of the defendant and the prosecution witnesses. We must decline the invitation since the inconsistencies in the testimony were minor in nature and were brought to the attention of the jury. The jury was also aware of the false statement about the victim's employment on her application for a license. None of these matters require that we discredit the prosecution testimony as a matter of law.

The defendant relies on United States v. Litberg, 175 F.2d 20 (7th Cir. 1949), in contending that the inferences necessary for conviction which might be drawn from the evidence were unreasonable, although he concedes that credibility determination is within the province of the jury. We have reviewed the evidence and conclude that it would not be unreasonable for the jury to find the defendant guilty as charged beyond a reasonable doubt.

## III

■ The defendant maintains that the Government failed to prove that his conduct constituted extortion as a technicality. The indictment charged Irali with alternative theories of extortion: the obtaining of money either (1) induced by wrongful use of fear of economic harm or (2) under color of official right. The instructions included both theories. The defendant relies on the Government trial counsel's statement at the instruction conference that "[w]e are proceeding with an official rights theory of extortion" and he argues that the fear of economic harm theory was waived. The defendant interprets the statement out of context. It is clear from the record that Government counsel made the statement while arguing about an instruction dealing with the *reasonableness* of the fear of economic harm. He did not waive the theory that the extortion was by fear of economic harm; he emphasized only that he was also proceeding under color of official right and that fear was not an element of the crime under that theory.[3]

---

3. The court and counsel were discussing the following instruction which was tendered by the defendant:

"For the acts alleged in the indictment to constitute extortion, you must find that the fear alleged in the mind of the alleged victim to be a reasonable one and there must be some basis for such fear in the evidence. Unjustified or unreasonable fear in the mind of an alleged victim cannot be the basis for you to conclude that he or she was the victim of an extortion."

The pertinent discussion follows:

The Court: I think it is all right if it is somehow limited to one element of extortion, which is the obtaining money by threat and inducing of fear. That is why I would change the last line to read—I wouldn't have

it read, ". . . she was the victim of extortion . . ." because this is only one element.

Mr. King [Assistant United States Attorney]: What are we talking about, 15?

The Court: I would have it read ". . . she was induced by fear to pay money . . . ."

Mr. Michletto [Defense Counsel]: What would your Honor suggest would be— ". . . victim of fear to pay money . . . ."?

The Court: "She was induced by fear to pay money."

Mr. King: What are we substituting?

Mr. Michletto: The last sentence would read, then, your Honor ". . . unjustified or unreasonable fear in the mind of an

There was sufficient evidence under either theory for the jury to convict the defendant. First, contrary to Irali's contention, it was not unreasonable for Mrs. Svedman to believe that she would not get her liquor license until she paid the money. Although the victim may have first approached Irali about help in the processing of her application due to the delay, the evidence established that he was the one who raised the necessity of a payment to Officer Greenwich of "$500 for his troubles." It is also clear that Irali relayed or concocted further demands when Mrs. Svedman balked and that he finally suggested and accepted $150. The day that Mrs. Svedman received her license, she opened her tavern. A denial or even a delay in obtaining her license meant lost business. According to the evidence, the average liquor license is obtained within ten days to three weeks of the application. Here the payment was made on the twenty-third day after the application was filed and the license was then received five days later. It would be permissible for the jury to infer that the victim had a reasonable fear of economic harm if she did not pay Irali.

Second the defendant contends that there was no evidence that he obtained this money through his official position in the liquor license department of the City Collector's office. This department did not have the responsibility for approving liquor licenses, but did have the responsibility for processing them by sending them to the building department to consider whether the zoning was proper, to the police department for its recommendation on the application itself, to the license commissioner for decision, and then to the City Clerk for issuance. The City Collector had the responsibility of forwarding the application between the departments. A delay in this ministerial duty could cost the license applicant in lost revenue due to inability to open a tavern.

Mrs. Svedman knew Irali worked in the city hall on liquor licenses. He admitted to having helped her with her application though he denied accepting the $150. Although Irali, as a principal clerk in the liquor license department of the City Collector's office could only have delayed or at worst lost the application, the person on whose behalf he said he spoke, Officer Greenwich, had an

alleged victim cannot be the basis for you to conclude that he or she . . . "

The Court: Well, "she was induced by fear to pay money."

Mr. King: Wait a minute, your Honor. The Government objects to that instruction. Not only is it not artfully drawn, but it is—again it is not an accurate statement of the law. We are taking one element of the law, one potential element of Hobbs Act extortion, and magnifying it so that it minimizes the other possible alternatives; and that is considered together with the instructions why I suggest that this instruction should be with respect to official right. The Government objects to this instruction.

The Court: I think it is something the jury should be instructed on. I grant you that it is not very well drafted. I think perhaps the way to have it read would be, " . . . any fear in the mind of the alleged victim must be a reasonable one, and there must be some basis for such fear in the evidence. Unjustified or unreasonable fear in the mind of an alleged victim cannot

be the basis for you to conclude that she was induced by fear to pay money."

Mr. King: Would you read the first sentence again, please.

The Court: " . . . any fear . . . . " those two words will replace the first two lines. The rest of the sentence—

Mr. King: Wait a minute. "Any fear . . . "

The Court: Strike out the rest of the first two lines.

Mr. King: " . . . any fear in the mind of the alleged victim . . . "

The Court: " . . . must be a reasonable one, and there must be some basis for such fear in the evidence."

Mr. King: In that case we must object to the second sentence. Because it becomes redundant, it re-emphasizes the question of reasonable or unreasonable, justifiable and unjustifiable fear. We are proceeding with an official rights theory of extortion.

The Court: All right, I will give it as modified.

official position in which he could recommend that the license not be issued. Accordingly, there was sufficient evidence for the jury to have found that Irali, acting either under his own position or purportedly through Greenwich's position, affected interstate commerce by extortion.[4]

## IV

■ The defendant contends that the Government failed to prove any affect on commerce during the negotiation stage in November 1969 and that the trial court erred in permitting testimony about liquor sales to Mrs. Svedman after November. The indictment charged that the extortion was committed on or about November 1969. The evidence showed that the victim did not receive her license until she paid the $150 to Irali and that when she received her license, she immediately opened her tavern, making sales and purchases during the month of November. The testimony about latter sales was relevant since it helped establish the affect on interstate commerce through the delay in opening the tavern.

## V

■ The defendant argues that there was a misjoinder of the counts in violation of Rule 8(a), F.R.Crim.P. The panel in United States v. Pacente, 490 F.2d 661 (7th Cir. 1973), held, under facts essentially the same as those here, that joinder of a false declaration count with an extortion count was proper. The court en banc agreed. at 545.

Another issue which Irali obliquely raises is that there should have been a

severance of the counts because the joinder was prejudicial. This issue was resolved against the defendant by the court sitting en banc after the hearing in United States v. Pacente, at 545–550. The court held there that the denial of a motion to sever the counts under Rule 14, F.R.Crim.P. was not an abuse of discretion.[5]

## VI

■ Irali contends that the summoning of him before the grand jury was an abuse of the grand jury process.[6] A two fold argument is advanced: (1) the prosecutor was trying to undermine defendant's credibility in the eyes of the petit jury and (2) the grand jury was "merely extracting testimony with a view to a perjury prosecution." The first argument is basically that prejudice resulted in joining the counts. This argument, based on Rule 14, F.R. Crim.P. was rejected by the en banc court in Pacente. The second argument was dealt with recently in United States v. Devitt, 499 F.2d 135 (7th Cir., 1974). In that case the defendant was convicted of giving false answers to questions concerning extortionate conduct on his part for which the statute of limitations had run. Senior District Judge Campbell, sitting by designation and speaking for the court, said that it was a legitimate purpose of the grand jury to ask a defendant questions in order to obtain the names of unknown extortion victims which would further its investigation of "possible extortionate conduct by certain Chicago Police Department personnel in violation of the Hobbs Act." 499 F.2d 139. In the instant case the grand jury was also investigating possible viola-

4. Irali argues that "no one can commit extortion under color of official right by using the office of another." It is unnecessary to reach the question since the jury could have found him guilty of having aided and abetted Officer Greenwich in extorting the money under color of official right.

5. In the instant case, unlike Pacente, no motion to sever was made.

6. He contends that he was indicted for making a material false declaration to the grand jury within an hour after his testimony. Although we have found no basis for this statement in the record and the appellant has failed to point out any such reference, such a short time span would not be a basis for holding that the grand jury process had been abused.

tions of the Hobbs Act by the Chicago police. It is obvious from the evidence in this case that there was a question whether Officer Greenwich was engaged in the extortion. An investigation of such alleged conduct was within the proper bounds for the grand jury, and the calling of a putative defendant before the grand jury for questioning in regard thereto did not violate his constitutional rights. United States v. Cefalu, 338 F.2d 582 (7th Cir. 1964).[7]

■ Irali finally contends that by calling him before the grand jury, the Government placed him in a prejudicial dilemma. If he admitted taking the payoff, he would incriminate himself; if he invoked the Fifth Amendment, he would be dismissed from his job;[8] and if he denied taking the payoff, he would be indicted for making a material false declaration. In United States v. Devitt, *supra,* 499 F.2d 142, Senior Judge Campbell, after discussing Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562 (1967); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); and Uniform Sanitation Men v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), as well as our recent decision in Confederation of Police v. Conlisk, 489 F.2d 891 (7th Cir. 1973), wrote:

"[W]e find nothing in these decisions or in this court's holding in *Confederation of Police* which grants a witness before the grand jury the third alternative which, in substance, is proposed by the defendant in the instant case: the right under such circumstances to knowingly make a false material declaration while testifying under oath before a grand jury."

The *Devitt* case controls here.

## VII

■ Finally, the defendant challenges the instructions given on aiding and abetting, affect on commerce, extortion under color of official right, and extortion by fear of economic harm. He argues that it was improper for the court sua sponte to give an instruction on aiding and abetting since there was no support for it in the record. The instruction read:

"Whoever aids, abets, counsels, commands, induces or procures the commission of a crime is punishable as a principal. In order to aid or abet the commission of a crime a person must associate himself with the criminal venture, participate in it and try to make it succeed."

The evidence lends itself to giving of this instruction because the testimony established that Irali represented that it was Officer Greenwich who wanted the money and because it was he, Irali, who served as the go-between both in reducing the demanded sum as well as in collecting the payoff.

■ He further challenges the instruction, contending that it failed to set forth specific criminal intent as an element of the crime of aiding and abetting. Unlike United States v. Nix, 501

---

**7.** Defendant contends that *Cefalu* is distinguishable because he was not a public official and also because he pleaded the Fifth Amendment. These distinctions are not material. A grand jury is permitted to summon all citizens, regardless of official position. Nor can invocation of the Fifth Amendment be considered justification for different treatment since this only occurs after a witness has appeared before the grand jury.

**8.** In Confederation of Police v. Conlisk, 489 F.2d 891, 895 (7th Cir. 1973), cert. denied,

sub nom Rochford v. Confederation of Police, 42 U.S.L.W. 3594 (April 22, 1974), this court held that Rule 51 of the Chicago Police Department Rules, insofar as it prohibits policemen from exercising their Fifth Amendment rights is unconstitutional. There is no evidence that there was such a rule in the City Collector's office or that Irali would have been dismissed if he had invoked the Fifth Amendment protection against self-incrimination.

F.2d 516, at 516–517 (7th Cir., 1974), this objection was not raised at the instruction conference. The instruction is taken from the Supreme Court's definition of aiding and abetting in Nye and Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949), and unlike the instruction in United States v. Bryant, 461 F.2d 912 (6th Cir. 1972), the second sentence told the jury that to find Irali guilty, it must find that he participated in and tried to make the commission of the crime succeed.

■ The defendant also objected to the instruction on the requisite affect on commerce necessary to constitute a violation of the Hobbs Act in that it failed to set forth a necessary minimum level. The instruction was that if commerce was affected "in any way or degree" by extortion, a crime was committed. This instruction is in accord with our decision in United States v. DeMet, *supra*, where the de minimis argument was rejected.

The defendant also contends that the trial judge erred in giving an instruction on the theory that Irali had extorted money through fear of economic harm after the Government maintained that it was proceeding under a color of official right theory. We reject this contention for the reasons set forth in section III of this opinion.

■ Finally the defendant argues that the instruction interpreting the color of official right was erroneous. The instruction read:

"If a public employee obtains money from another by fear induced by wrongful *fear* of official right, then that is sufficient to satisfy the requirements of the law that money be obtained by means of extortion." (Emphasis added.)

Since the instruction, as presented and accepted at the instruction conference had the word "use" rather than "fear," we assume the substitution was an inadvertent mistake. In any event, we do not consider this a basis for reversal since the mistake was not to the defendant's detriment and defendant never interposed an objection.

The conviction on both counts of the indictment is affirmed.