**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank RINDONE, Defendant–Appellant.**

No. 79–1457.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1980.

Decided Aug. 1, 1980.*

---

* This appeal was originally decided by unreported order on August 1, 1980. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Matthias A. Lydon, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Daniel E. Reidy, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and WOOD, Circuit Judges, and LARSON, Senior District Judge.**

** The Honorable Earl R. Larson, Senior District Judge of the District of Minnesota, is sitting by designation.

1. 18 U.S.C. § 1951 provides in relevant part:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do ... shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.
   (b) As used in this section—
   * * * * * *

PER CURIAM.

Defendant–appellant Frank Rindone was an electrical inspector employed by the Chicago Department of Electrical Inspection. Following an FBI investigation of Rindone's conduct in accepting payments from electrical contractors in exchange for the issuance of work permits, defendant was charged on October 31, 1978 in a three–count indictment with violating the Hobbs Act, 18 U.S.C. § 1951.[1] After a jury trial, defendant was found guilty on one count of affecting commerce and attempting to do so by extorting $100 from an electrical contractor, Lee Roy Harper, under color of official right.

On appeal, defendant asserts the following grounds for reversal: (1) insufficient nexus with interstate commerce to invoke jurisdiction under the Hobbs Act, (2) insufficient evidence that the receipt of payment was under color of official right, and (3) denial of defendant's sixth amendment right to effective counsel by the court's submission to the jury of a transcript of a tape recording without notifying counsel.

I.

The most plausible of defendant's arguments is that because the Federal Bureau of Investigation (FBI) supplied the money used in the extortionate transaction, no depletion of the payor's assets was possible and thus the nexus with interstate commerce is not sufficient to invoke Hobbs Act jurisdiction. Defendant's argument, however, fundamentally misreads the Act and

(2) The term "extortion" means the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

the line of judicial interpretation it has spawned.

The Hobbs Act proscribes not only the acts of obstructing or affecting interstate commerce through extortion but also proscribes "attempts . . . so to do." In short, a section 1951 violation is complete when one attempts to induce a victim engaged in interstate commerce to part with property. *United States v. Glynn*, 627 F.2d 39, at 42 (7th Cir. 1980); *United States v. Frazier*, 560 F.2d 884, 887 (8th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Thus, sufficient evidence to prove an attempt to extort has been found even where the payment demand was made but the victim refused to comply. *United States v. Rosa*, 560 F.2d 149 (3d Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977). In the present case, Rindone's offense was complete at the time he demanded payment but before the actual transfer of money.

In *United States v. Staszcuk*, 517 F.2d 53, 60 (7th Cir.) (en banc), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), then-Judge Stevens noted that the "jurisdictional inquiry must, . . . focus on the situation at the time of the offense. . . . No actual effect on commerce occurred either before or after that date. It was, nevertheless, entirely reasonable for the jury, assessing probabilities as of that time, to find that a potential effect on commerce had been proved." This approach the court found justified on the theory that in enacting section 1951 "Congress was as much concerned with the threatened impact of the prohibited conduct as with its actual effect." *Id.* at 57. Taking note of the federal interest in deterring even futile threats to interstate commerce, this court found that "jurisdiction in the particular case is satisfied by showing a realistic probability that an extortionate transaction will have some effect on interstate commerce" as measured from the time of the offense. *Id.* at 60.

The question here then becomes whether, viewing the evidence in the light most favorable to the government, there is suffi-cient evidence that would allow a jury to find that a "realistic probability" existed at the time of the payment demand that Harper's assets would be depleted by the extortionate transaction. It is undisputed here that Harper, at the time of the transaction, was engaged in interstate commerce. His business regularly purchased wire and other electrical equipment from sources outside the State of Illinois. This is not a situation, as in *United States v. Elders*, 569 F.2d 1020 (7th Cir. 1978), where no future interstate purchases were even possible because the victim had long since ceased to purchase out-of-state goods and had decided to go out of business and dissolve his corporation. There is nothing in the record to indicate that Harper's business would be anything but fully viable or that interstate goods purchases would cease after the illegal transaction. Thus, the fortuitous use of FBI funds *after* completion of the extortion attempt does not in any way diminish the "realistic probability" that, at the time of the attempt, Harper's assets would be potentially depleted.

This reading of the Hobbs Act jurisdictional requirement is amply supported by authority in this and other circuits. In *United States v. Crowley*, 504 F.2d 992, 994 (7th Cir. 1974), involving a police protection scheme, jurisdiction was upheld on a depletion of assets theory notwithstanding that the victim tendered the extortion payment with FBI-provided money. A depletion of assets theory has also been sustained in a number of cases where it was factually impossible that the extortion money could ever affect interstate commerce because the payment was intended to be immediately recovered, *United States v. Phillips*, 577 F.2d 495 (9th Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978), where the victim corporation was an FBI-created shell that in fact had no interstate dealings, *United States v. Brooklier*, 459 F.Supp. 476 (C.D.Cal.1978), and where the entity extorted was only a speculative venture that never became established or purchased goods interstate, *United States v. Bellomini*, 454 F.Supp. 44, 47 (E.D.Pa.1978).

As the court noted in *Brooklier*, "[t]his extortion completed a plan that would have actually affected commerce but for a fact unknown to defendants, *i. e.*, that [the victim] was a company not actually engaged in commerce." *Id.* at 478. The presence here of a fact not known to Rindone, *i. e.*, that the FBI provided the payoff money, is likewise irrelevant to the jurisdictional inquiry. That the extortion could not at the moment of the payoff have actually affected commerce is not enough to defeat the jurisdictional nexus. All that is required is the showing made here that at the time of the attempt, a realistic probability existed that interstate commerce would be affected.

Our finding here is also supported by the well–settled law in this circuit that jurisdiction is satisfied by an implied, even unrealizable, threat to affect the future business operation of the victim if the extortionate demand is not met. *United States v. Kuta*, 518 F.2d 947, 951 (7th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975); *United States v. Crowley*, 504 F.2d at 998; *United States v. Irali*, 503 F.2d 1295, 1298 (7th Cir. 1974); *United States v. Pranno*, 385 F.2d 387, 389 (7th Cir. 1967), *cert. denied*, 390 U.S. 944, 88 S.Ct. 1028, 19 L.Ed.2d 1132 (1968). In *Pranno*, this court found Hobbs Act jurisdiction where a building permit would not have been issued unless the extortion payment was made, on the theory that "[e]xtortion by threat to disrupt a local activity the stoppage of which would in time result in stoppage of interstate shipment of raw materials essential for the activity falls within the act." *Id.* In *Crowley*, "there was an implied threat that if payment was not made . . . the victims would not receive adequate police service, with the resultant effect of impairment of the business enterprise," 504 F.2d at 998; the potential interruption of interstate purchases resulting therefrom was found to be a sufficient basis for jurisdiction. Sufficient impact on interstate commerce has also been found where a liquor license applicant believed that the payor was in a position to delay processing of the application, thus delaying possible interstate purchases, *United States v. Irali*, 503

F.2d at 1298, and where the threat to obstruct a favorable rezoning application was indirect and inferred. *United States v. Kuta*, 518 F.2d at 951.

In the present case there is ample evidence in the record from which the jury reasonably could have concluded that such a threat to impair Harper's business was present. At the time of the payment, Harper had violated important sections of the Chicago Electrical Code, *e. g.*, commencing electrical work without a permit and performing work as an unregistered contractor. Rindone, charged with enforcement of the Code, was obligated by law to issue a violation ticket to Harper, resulting in the latter's appearance before the city's Compliance Board and the Municipal Court for punitive sanctions. Instead, after the payment, Rindone ignored the violations and illegally secured a permit to cover the unlawfully performed work, thus allowing Harper's business to continue unimpaired and undelayed. Harper testified that had he not paid Rindone, "I would have been issued a citation, they would have dragged me into the Compliance Board and then into court and possibly been fined or gone to jail." He further testified regarding payment: "That's the only way that I could operate my business. If I didn't pay it . . . they would have been harassing me. . . ." Finally, the threat to Harper's business was stated in no uncertain terms by Rindone who warned that failure of payment would make Harper "wind up . . . right in the [expletive] street back in the gutter." The jury, weighing the credibility of the testimony and assessing the underlying circumstances, could reasonably have found a "realistic probability" that interstate commerce would have been impaired if the threat to Harper's business had been carried out.

## II.

Defendant next asserts that there is insufficient evidence in the record to support the jury's conclusion that the $100 payment was received by defendant "under

color of official right" and thus did not amount to extortion under the Hobbs Act. This contention is also without merit.

■ Defendant relies on the fact that he was without legal authority to issue a permit and thus his promise did not contemplate the exercise of "official right." However, it is immaterial whether the questioned transaction involves a promise by the official to undertake acts unrelated to his duties. "So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of the [Hobbs Act]." *United States v. Braasch,* 505 F.2d 139, 151 (7th Cir.), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1974). Defendant's argument here was furthermore explicitly rejected by this court in a factually parallel case involving the same victim, *United States v. Price,* 617 F.2d 455 (7th Cir. 1979). As this court noted, "[t]he fact that Price provided permits to Harper in violation of the law will, thus, avail him nothing. He was able to provide the permits due to his official position." *Id.* at 457. This court has sustained convictions for extortion under color of official right even where the recipient had no legal control over the issuance of the desired permit. *United States v. Irali,* 503 F.2d at 1300. *De jure* ability to perform the promised act need not be present; sufficient is "a reasonable belief that the state system so operated that the power in fact of the defendant's office included the effective authority" to fulfill the promise. *United States v. Mazzei,* 521 F.2d 639, 643 (3d Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

In the present case, defendant clearly possessed the effective authority to secure a permit and did so through an official clerk within his agency. Rindone further urged the victim to secure permits through inspectors like himself in the future, as they were more reliable sources than private contractors. Furthermore, the victim, who had illegally performed work without a permit, feared that in the absence of payment, he would "have been issued a citation, they would have dragged me into the Compli-

ance Board and then into court and possibly been fined or gone to jail." Indeed, Rindone overlooked the violation but warned that failure to deal with official inspectors would cause Harper "to wind up . . . right in the [expletive] street back in the gutter." There was thus ample evidence to permit a jury finding that "the victim's consent was induced by defendant's office." *United States v. Craig,* 573 F.2d 513, 520 (7th Cir.), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978).

### III.

■ Defendant finally asserts that he should be granted a new trial because his sixth amendment right to effective counsel was denied when the trial judge provided the jury with a transcript of a tape recording of a crucial meeting between Harper and Rindone that had been admitted into evidence. The transcript was provided after trial and before jury deliberation without consulting defendant's counsel. However, defendant does not argue that there is any discrepancy between the tape and the transcript or that the transcript is in any way inaccurate. In addition, both the tape and the transcript had been previously viewed and heard at trial by the jury with an appropriate cautionary instruction to favor the taped version if there arose a conflict between tape and transcript. A similar cautionary instruction was repeated when the transcript was offered to the jurors before deliberation, and the court indicated its willingness to provide both the tape and transcript.

In *United States v. Dorn,* 561 F.2d 1252, 1257 (7th Cir. 1977), this court considered a situation in which a previously unadmitted transcript was provided to the jury over a protest that it contained blatant inaccuracies. However, as here, "any problems that could have arisen were obviated by the meticulous instructions given the jury concerning the proper function of the transcripts." *Id.* While it may have been error to provide the transcript without consulting de-

**496**

fendant's counsel, in view of the admitted accuracy of the transcript, its availability at trial, and the court's appropriate curative instructions, such error does not affect substantial rights of the defendant and may be disregarded. Fed.R.Crim.Proc. 52(a).

For the foregoing reasons, the judgment of the trial court is

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

In *United States v. Glynn*, 627 F.2d 39 (7th Cir. 1980), I wrote a dissent on the question presented in Part I of the order in the case at bar. The dissent in pertinent part read:

I am unable to comprehend how the assets of the Supreme Electric Company could have been depleted when the payoffs made in Count I, $100.00, and in Count II, $125.00, were furnished by the Federal Bureau of Investigation. Count IV presents the same situation; Lee Roy Harper, the owner of Harper's Electric Company, made a payoff of $250.00 to the defendant with FBI funds.

The argument is made that Hobbs Act jurisdiction exists because they charge an attempt to affect commerce in contrast to actual impact; therefore, the source of the bribe money is irrelevant. The argument, although superficially plausible is, in truth, both untenable and illusory.

First, the facts are that more than a mere attempt was made to extort money from the contractors named in Counts I, II, and IV. The bribery negotiations between the contractors and the defendant were not frustrated or aborted; they culminated in actual payments of bribes. Even if it could be said that the initial negotiations constituted an attempt, they eventually merged into a completed transaction, the transfer of money.

But even viewing the facts as portraying only an attempt to affect commerce, as the Government asks us to do, the argument still fails. This is because any

attempt to affect commerce was an impossibility when the monies offered and delivered to the defendant were Government funds rather than assets of the contractors. Conceptually, the transactions were illusory insofar as their having any possibility, let alone probability, of an effect on commerce. There was no possible risk that the contractors' assets might be depleted.

The case here is different from one involving the attempted sale or actual sale of contraband, such as guns or drugs, when Government funds are used. There the contraband exists and constitutes an element *vel non* of the offense. Here an effect, actual or potential, on commerce (a necessary jurisdictional element of a Hobbs Act prosecution) did not exist nor could it have come into existence.

Finally, the statute reads in part: "Whoever in any way or degree obstructs, delays or affects commerce . . ., by robbery or extortion or attempts . . . so to do . . . shall be fined . . . ." 18 U.S.C. § 1951. The statute does not cover "attempts" to affect commerce; it speaks only of "attempts" to rob or extort. Counts I, II, and IV charge that the defendant "did attempt to affect commerce . . . by extortion. . . ." Thus these counts were fatally flawed to start with; they did not charge a crime under the statute.

At 43–44. For the reasons I expressed in the foregoing paragraphs, I dissent in the case here. I would reverse.