**UNITED STATES of America, Plaintiff,**

v.

**Dominick Phillip BROOKLIER, et al., Defendants.**

**No. CR 78–180–HP.**

United States District Court,
C. D. California.

June 13, 1978.

Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., John C. Gibbons, San Francisco, Cal., Dennis Schloss, Sp. Atty., U. S. Dept. of Justice, for plaintiff.

Anthony P. Brooklier, Marks & Brooklier, Beverly Hills, Cal., for Dominick Phillip Brooklier.

Donald Marks, Marks & Brooklier, Beverly Hills, Cal., for Samuel Orlando Sciortino.

Howard Weitzman, Weitzman & Fidler, Los Angeles, Cal., for Louis Tom Dragna.

Thomas Kontos, Los Angeles, Cal., for Michael Rizzitello.

Wiley Ramey, Encino, Cal., for Thomas Ricciardi.

Terry Amdur, Pasadena, Cal., for Jack Lo Cicero.

Dennis McDonald, Haywood, Cal., for Aladena T. Fratianno.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNT IV OF THE INDICTMENT FILED APRIL 20, 1978

PREGERSON, District Judge.

Defendants Dominick Brooklier and Samuel Sciortino move for dismissal of Count IV of the indictment. Their motions raise three related but distinct arguments. Defendants argue that (1) an actual or potential effect on commerce is a necessary element of an *attempted* violation of the Hobbs Act, 18 U.S.C. § 1951, and Count IV of the indictment is defective because it does not allege facts showing such an effect; (2) they cannot be found guilty of an attempted violation of the Hobbs Act because of the doctrine of legal impossibility; and (3) Congress lacks constitutional power to proscribe activities such as those alleged in Count IV of the indictment. These arguments will be considered separately.

### STATEMENT OF FACTS

According to the indictment, after demanding a "piece of the action" from Forex Co. and its operators, the defendants succeeded in obtaining $6,500 from the company through the use of actual and threatened force. Had Forex been a company actually engaged in interstate commerce, defendants probably would not have made this motion. In reality, Forex was "an undercover business established by agents of the Federal

Bureau of Investigation and purported to deal in the sale of pornographic films to Mexico and South America." Para. 1(b) of Indictment. In oral argument, the government admitted that no *actual* effect on interstate commerce was caused by defendants' activities.

## I. DOES THE INDICTMENT PROPERLY ALLEGE A VIOLATION OF THE HOBBS ACT?

Section 1951 of Title 18, United States Code, states in part:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do [shall be guilty of an offense against the United States].

Count IV of the indictment does not charge the defendants with actually obstructing commerce through extortion, but charges only that they did "knowingly *attempt* to obstruct, delay and affect commerce . . . by the wrongful use of actual and threatened force." (Emphasis added.) Since Forex was not actually involved in interstate commerce, defendants argue that they cannot be guilty of an attempted violation of § 1951.

The Language of the Hobbs Act and Extensive Case Law Show that an Attempted Violation of the Act does not Require an Actual Effect on Interstate Commerce.

The wording of § 1951 indicates that an attempt to obstruct commerce by extortion is an offense against the United States. In *United States v. Rosa*, 560 F.2d 149 (3d Cir.), *cert. denied, sub nom. United States v. Sica*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977), defendant Sica was charged with attempted extortion under the Hobbs Act. To support his contention that the statute did not proscribe attempted extortion Sica introduced into evidence a letter

from three expert grammarians who opined that although § 1951 makes illegal an attempt to obstruct interstate commerce by actual *completed* extortion, the statute does not make illegal an actual obstruction of commerce through *attempted* extortion.

■ Although the court in *Rosa* concluded, probably correctly, that the Hobbs Act did proscribe attempted extortion, the grammarians were correct in their opinion that § 1951 makes illegal an attempt to obstruct commerce through completed extortion, which is precisely what the indictment before this court alleges. The defendants, according to the indictment, did extort $6,500 from Forex. This extortion completed a plan that would have actually affected commerce but for a fact unknown to defendants, i. e., that Forex was a company not actually engaged in commerce. In substance, Count IV alleges that defendants attempted to affect commerce by means that constituted actual extortion. Under a literal reading of the statute, such an allegation, if proved, constitutes a violation of § 1951.[1]

Case law on attempts under the Hobbs Act also makes it clear that the Act may be violated even if no actual interference with interstate commerce results from the violation. In *United States v. Staszcuk*, 517 F.2d 53 (7th Cir.), *en banc, cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), Staszcuk extorted $3,000 from one Allen in exchange for Staszcuk's non-opposition to a proposed zoning change permitting the construction of a hospital, a project in which Allen was financially interested. Although the zoning change was approved, the hospital was never built. The court stated: "Therefore, there is no evidence that either the zoning change or the payment had any effect whatsoever, either favorable or unfavorable, on interstate commerce." *Id.* at 55. Despite this conclusion, the court in *Staszcuk* held that the defendant's conviction for an attempted violation of the

---

1. The Supreme Court has recently approved the practice of reading the Hobbs Act literally. In *United States v. Culbert*, 435 U.S. 371, 98 S.Ct. 1112, 1117, 55 L.Ed.2d 349 (1978), the

Court stated: "Congress intended to make criminal all conduct within the reach of the statutory language."

Hobbs Act was proper. The Ninth Circuit agrees with the Seventh Circuit's position that an actual effect on interstate commerce is not required for an attempted Hobbs Act violation. In *United States v. Phillips*, 577 F.2d 495 at 501 (9th Cir. 1978), the Ninth Circuit cited *Staszcuk* for the proposition that in a prosecution for an attempted Hobbs Act violation, the "effect on interstate commerce need be only probable or potential, not actual."

The defendants argue that in *Staszcuk*, unlike the case before this court, there was a reasonable probability that interstate commerce would be affected by the extortionate acts. The court in *Staszcuk* did use this analysis, stating: "[J]urisdiction in the particular case is satisfied by showing a realistic probability that an extortionate transaction will have some effect on interstate commerce." 517 F.2d at 60. But *Staszcuk* did not consider a factual situation analogous to the one presented in this case. It is noteworthy that in *Staszcuk*, the court concluded that even a potential effect on interstate commerce was sufficient to establish jurisdiction.

In view of the statutory language, which proscribes an attempt to obstruct commerce by extortion, and the cases interpreting § 1951, which have not required an actual effect on interstate commerce for an attempted violation of that section, the court concludes that the indictment properly alleges an attempted violation of the Hobbs Act.

## II. DOES THE DOCTRINE OF IMPOSSIBILITY PREVENT A FINDING THAT THE DEFENDANTS ATTEMPTED TO VIOLATE THE HOBBS ACT?

The defendants argue that they cannot be found guilty of an attempted violation of the Hobbs Act because of legal impossibility. Legal impossibility is said to exist whenever the intended acts, even if successfully completed by a defendant, would not constitute a crime under the applicable substantive law. Factual impossibility, on the other hand, refers to those situations in which a circumstance unknown to the defendant renders the consummation of the intended criminal conduct physically impossible. It is generally held that while legal impossibility is a defense to a charge of attempt, factual impossibility is not. See generally *United States v. Frazier*, 560 F.2d 884, 888 (8th Cir. 1977); *United States v. Heng Awkak Roman*, 356 F.Supp. 434 (S.D.N.Y.1973), *aff'd* 484 F.2d 1271 (2d Cir. 1973), *cert. denied* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); W. Lafave & A. Scott, *Handbook on Criminal Law* 438–45 (2d ed. 1972). It is not always easy, however, to classify a given situation as constituting legal as opposed to factual impossibility.

In raising their impossibility defense, the defendants primarily rely on *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973). In *Berrigan*, the defendants were convicted of attempted violations of 18 U.S.C. § 1791, which prohibits the smuggling into or out of a federal prison any item without the knowledge of the warden. In fact, with regard to many of the charged counts, the warden knew of the defendants' smuggling. On appeal, the defendants argued with regard to these counts that they could not be guilty of attempted violations of § 1791 because of legal impossibility. The Third Circuit agreed, reasoning that since the activities planned and engaged in by the defendants could not constitute a completed violation of § 1791, the defendants could not be convicted of an attempt to violate that section.

The reasoning of *Berrigan*, if applied to the case before this court, would require dismissal of Count IV of the indictment. In *Berrigan*, the defendants engaged in activities that would have violated federal law but for a fact unknown to them, i. e., the warden's actual knowledge of their smuggling operations. Similarly, in the case before this court, the defendants allegedly engaged in activities that would have violated federal law but for a fact unknown to them, i. e., that Forex was not engaged in commerce.

Although case law on this question is rather scarce, most courts and commentators have not adopted the *Berrigan* approach, a fact apparently known to the court in *Berrigan*. See *Berrigan*, 482 F.2d at 186. The Second Circuit, for example, takes an approach to the doctrine of impossibility radically different from that adopted by the Third Circuit in *Berrigan*. In *United States v. Heng Awkak Roman, supra*, 356 F.Supp. 434, the defendants were charged with an attempt to possess heroin with an intent to distribute. Actual possession with intent to distribute the heroin was not possible since an FBI informant substituted soap powder for the heroin. The court held that the situation presented a case of factual impossibility, and that since the criminal intent of the defendants was amply demonstrated by the evidence presented, the defendants could be convicted of an attempt to possess heroin with an intent to distribute.

Another pertinent Second Circuit case is *United States v. Marin*, 513 F.2d 974 (2d Cir. 1974). In *Marin*, the defendant purchased "fake" cocaine from a government informer. The court relied on *Roman, supra*, to conclude that this was a case of factual impossibility that did not prevent a finding of attempted possession. If the rationale of these Second Circuit cases is applied to the case before this court, then Count IV of the indictment should stand. Here, as in the Second Circuit cases, the defendants, according to the indictment, intended to commit a crime and would have done so but for circumstances unknown to them at the time of their actions. The Second Circuit test is in basic agreement with § 5.01(1) of the Model Penal Code which provides that a person is guilty of an attempt "if acting with the kind of culpability otherwise required for commission of the crime he: (a) purposely engaged in conduct which would constitute the crime if the attendant circumstances were as he believes them to be." Model Penal Code § 5.01 (proposed official draft May 4, 1962).

An approach somewhere between the *Berrigan* approach, which focuses almost solely on the question whether the objective acts committed by the defendant constitute a crime irrespective of the defendant's intent, and the Model Penal Code/Second Circuit approach, which focuses primarily on the intent of the actor, is provided by the Fifth Circuit. In *United States v. Oviedo*, 525 F.2d 881 (5th Cir. 1976), defendant Oviedo was charged with attempted distribution of heroin in violation of 21 U.S.C. § 846. Oviedo sold a non-controlled substance he represented to be heroin to a narcotics agent. The jury concluded that Oviedo thought that the substance he was selling was heroin and convicted him of attempted distribution of heroin. On appeal the Fifth Circuit reversed.

The thrust of the Fifth Circuit's opinion in *Oviedo* is that the acts of the defendant must strongly and unequivocally corroborate his intent to commit the crime in question. On the facts of *Oviedo*, the court did not believe that the acts of the defendant were sufficiently corroborative of an intent to distribute heroin. *Oviedo's* defense at trial was that he knew that he was not selling heroin but just intended to "rip off" the agent. Since the objective acts of Oviedo were nearly as supportive of Oviedo's theory as they were of the government's, the court concluded that Oviedo's conviction must be overturned.

Later Fifth Circuit cases better illustrate the idea that in an "impossible attempt" situation the defendant's actions must strongly suggest the presence of the requisite mens rea. In *United States v. Korn*, 557 F.2d 1089 (5th Cir. 1977), the defendant was indicted for knowingly attempting to distribute a controlled substance. Korn had negotiated with a government undercover agent for the purchase of 40,000 methaqualone tablets for $20,000. Korn did purchase four cartons of what he believed to be the tablets for the agreed price, but the cartons contained non-controlled simulated methaqualone tablets. The district court granted Korn's motion to dismiss based on the earlier Fifth Circuit *Oviedo* decision. On appeal by the government, the Fifth Circuit reversed the district court's dismissal and distinguished *Oviedo* on the grounds that

Korn's act in parting with a substantial sum of money to obtain the tablets clearly substantiated his belief that they were the "real thing." *Korn*, 557 F.2d at 1091. See also *United States v. Hough*, 561 F.2d 594 (5th Cir. 1977).

If the Fifth Circuit's approach is applied to this case, Count IV of the indictment should stand. The acts charged in the indictment, i. e., use of actual and threatened force to extort money from Forex and its operators, are strongly corroborative of the extortionate intent needed to violate the Hobbs Act.

The Ninth Circuit has not addressed the issue of impossibility as a defense to a charge of attempt.[2] It is well-settled in this Circuit that impossibility is not a defense to a charge of *conspiracy* to commit an offense. See, e. g., *United States v. Sanford*, 547 F.2d 1085 (9th Cir. 1976). The government argues that since attempt and conspiracy are both anticipatory crimes, impossibility should no more be a defense in an attempt prosecution than in a conspiracy prosecution. The government does not cite any authority to support this proposition. Ninth Circuit cases dealing with conspiracy emphasize that "the crime of conspiracy is complete upon the agreement to violate the law, as implemented by one or more overt acts . . ., and is not at all dependent upon the ultimate success or failure of the planned scheme." *Sanford*, 547 F.2d at 1091, *quoting United States v. Thompson*, 493 F.2d 305, 310 (9th Cir.), *cert. denied* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). Attempt, on the other hand, is much more closely connected with commission of the substantive offense, as an attempt must be dangerously proximate to apparent success. R. Perkins, *Perkins on Criminal Law* 572 (2d ed. 1969).

In summary, there appear to be three different views among the circuits on impossibility as a defense to an attempt charge. Under the Third Circuit's *Berrigan* approach, impossibility, regardless of criminal intent, is a defense. Under this analysis Count IV should be dismissed because defendants' alleged plan to extort money from Forex could not possibly have affected interstate commerce, as Forex was not engaged in commerce. Under the Second Circuit's *Roman* approach, Count IV should not be dismissed because the indictment amply alleges that the defendants had the criminal intent to violate § 1951, and would have done so but for circumstances unknown to them that prevented an actual violation. Finally, under the Fifth Circuit's *Oviedo* approach, Count IV should not be dismissed, as the acts of the defendants alleged in the indictment strongly and unequivocally corroborate an intent to violate the Hobbs Act.

Having reviewed the authorities, the court is in agreement with the Fifth Circuit's position. The court concurs with the Fifth Circuit's observation that a "strict application of the *Berrigan* approach would eliminate any distinction between factual and legal impossibility, and such impossibility would *always* be a valid defense, . . ." *United States v. Oviedo*, 525 F.2d at 884 (emphasis in original). Although "criminal liability [should not be imposed] upon mere intent, where the will is to be taken for the deed," a fear underlying the *Berrigan* decision, 482 F.2d at 186, the court feels that

---

2. State law on impossibility as a defense to a charge of attempt also exhibits a variety of approaches. In *People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906), the Court of Appeals for New York held that a person who received property under the misapprehension it was stolen could not be convicted of attempting to receive stolen goods. In contrast, California courts have concluded that the impossibility of completing the crime of receiving stolen goods is not a valid defense. *People v. Rojas*, 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921 (1961); *People v. Moss*, 55 Cal.App.3d 179, 127 Cal.Rptr. 454 (1976). In general, California courts have rejected the defense of impossibility. Under California law, the type of impossibility presented in the case before this court would not be a defense to an attempt charge. *People v. Siu*, 126 Cal.App.2d 41, 271 P.2d 575 (1954) (possession of talcum powder under belief it is narcotics is attempted possession of narcotics); *People v. Cummings*, 141 Cal. App.2d 193, 296 P.2d 610 (1956) (attempting to abort a non-pregnant woman is an attempted abortion). For further discussion on state approaches to the impossibility defense, see *United States v. Hair*, 356 F.Supp. 339, 341–342 (D.D.C.1973).

the Third Circuit's approach to impossibility, which punishes objective acts and considers intent immaterial, does not adequately serve to deter conduct actuated by criminal intent.

The court also agrees with the Fifth Circuit that the Second Circuit's approach, with its almost exclusive focus on the intent of the actor, invites speculation and increases the risk of an erroneous conclusion as to the defendant's state of mind. *Oviedo*, 525 F.2d at 885.

The Fifth Circuit's standard, which requires objective acts to unequivocally corroborate the necessary criminal intent, properly accommodates the concerns underlying the conflicting views on the impossibility defense. Such an accommodation safeguards both the government's interest in deterring criminal conduct and the citizen's right not to be injured by "possible erroneous official conclusions about his guilty mind." Enker, *Impossibility in Criminal Attempts—Legality and the Legal Process*, 53 Minn.L.Rev. 665, 668 (1969), cited in *Oviedo*, 525 F.2d at 885 n. 11.

Turning to the case at hand, the court is satisfied that the defendants' acts as alleged in the indictment strongly and unequivocally corroborate an intent to violate the Hobbs Act. Therefore, the court concludes that the doctrine of impossibility does not require dismissal of Count IV.

## III. DOES CONGRESS HAVE THE CONSTITUTIONAL POWER TO PROSCRIBE ACTS SUCH AS THOSE ALLEGED IN THE INDICTMENT?

The defendants seem to suggest that Congress does not have the power to proscribe activities, such as those in issue here, that do not actually affect commerce. This contention has no merit. In *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the defendant loaned $1,000 to one Miranda, owner of a recently established butcher shop, at extortionate interest rates and was prosecuted under the Consuler Credit Protection Act, 18 U.S.C. § 891 *et seq.* No evidence was discussed in the opinion that would even suggest that the extortionate loan transaction had any effect on interstate commerce. Rather, the Court relied on a "class of activities" approach, and spoke at length about how "loan sharking" was a nationwide problem. The Court reasoned that since the "class of activities" comprising loan sharking had an effect on commerce when considered in its nationwide aspects, Congress might properly regulate any particular instance of the perceived nationwide evil without having to inquire whether each instance of loan sharking directly affected commerce. The Court stated:

> "Where the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class." *Perez*, 402 U.S. at 154, 91 S.Ct. at 1361, *quoting Maryland v. Wirtz*, 392 U.S. 183, 193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) (emphasis in original).

Undoubtedly a nationwide practice of extorting money from businesses has a significant effect on interstate commerce. Since the defendants were allegedly attempting to engage in that practice, the question becomes whether Congress may properly make attempted crimes not actually affecting commerce illegal, if the crime itself could properly be proscribed by Congress.

■ The court concludes that Congress can make such attempts illegal. The defendants admit that cases such as *United States v. Staszcuk, supra*, 517 F.2d 53 (7th Cir. 1975), *United States v. Augello*, 451 F.2d 1167 (2d Cir. 1971), *cert. denied* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972), and *Hulahan v. United States*, 214 F.2d 441 (8th Cir.), *cert. denied* 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954), holding that attempts prosecuted under the Hobbs Act need have only a *potential* effect on interstate commerce were correctly decided. A potential effect on interstate commerce, however, is not an actual or real effect on interstate commerce. In this case, the alleged attempted Hobbs Act violation that caused no actual effect on interstate com-

merce is indistinguishable from other attempts in which the effect on interstate commerce was also not actual, but merely potential.

The defendants also argue that a finding that the jurisdictional requirements of the Hobbs Act are satisfied will undermine the federal-state balance. In the recent case of *United States v. Culbert*, 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978), the Supreme Court addressed this concern, stating with reference to the legislative history of the Hobbs Act:

> Those who opposed the Act argued that it was a grave interference with the rights of the States. . . . Congress apparently believed, however, that the States had not been effectively prosecuting robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so. *Id.* at 1117.

Congress apparently intended the Hobbs Act to reach all activities that could be characterized as extortions or attempted extortions from businesses. The language of § 1951 is very broad, and subsection (b)(3) makes it clear that Congress intended the section to apply to all acts of extortion over which it might exercise jurisdiction. It therefore appears that Congress had the power and the intent to proscribe attempted obstruction of interstate commerce by extortion as charged in Count IV.

Having considered the arguments of counsel, the court denies defendants' motion to dismiss Count IV of the indictment.