UNITED STATES of America

v.

Anthony GIORDANO and Benito Guadagni, also known as "Benny", Defendants.

No. CR–81–270.

United States District Court, E. D. New York.

March 29, 1982.

David V. Kirby, Asst. U. S. Atty., Brooklyn, N. Y., for Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y.

Robert C. Dorf, New York City, for defendant Anthony Giordano.

Michael Coiro, Mineola, for defendant Benito Guadagni.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

The defendants, Anthony Giordano ("Giordano") and Benito Guadagni ("Guadagni") are charged in a seven count indictment with various crimes arising from a plan to commit arson. The subject of the instant motion is Count Seven of the superseding indictment wherein both defendants are charged with conspiring under 18 U.S.C. § 371 to maliciously damage and destroy a building in violation of 18 U.S.C. § 844(i) [1], by their planned arson of a fictitious piano store. [2]

1. Title 18, United States code, Section 844(i) reads as follows:

whoever maliciously damages or destroys, or attempts to destroy, by means of an explosive, any building, vehicle, or other real or

2. See note 2 on page 258.

The government has moved for two rulings prior to trial on the admissibility of certain expert testimony and on proposed jury instructions [3], relating to the jurisdictional requirement under Sections 844(i) and 371. Specifically, the issue is whether a conspiracy to destroy a fictitious piano store has a sufficient nexus with interstate commerce to come within the ambit of federal jurisdiction. In opposition both defendants have moved to dismiss Count Seven for lack of jurisdiction on the ground that the government's proposed proof would not establish a crime within the terms of the statute. After due consideration by this court, Count Seven is hereby dismissed for the reasons set forth below.

In Count Seven the defendants are charged with conspiracy to maliciously damage and destroy and attempt to damage and destroy by means of an explosive, a building used in interstate commerce and/or in an activity affecting interstate commerce. See 18 U.S.C. §§ 844(i) and 371. In this case the building is a fictitious piano store. From the facts submitted by the government, this investigation began after an informant told the FBI that the defendant Giordano had previously contracted to have arsons committed. On the basis of this information, FBI agents told the informant to ask Giordano to put the informant in contact with those who had committed the prior arsons in order to get these people to undertake an arson for him, the informant.

A meeting between Giordano and the informant subsequently took place on April 20, 1981 and was recorded by a tape recorder worn by the informant. At that meeting, the informant told Giordano the FBI's prearranged story. He explained to Giordano that he knew a piano store owner in Queens whose store was doing poorly, and who consequently wanted it "torched." Giordano then indicated that he had exe-

personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than 10 years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than 20 years or fined not more than $20,000 or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty, or to life imprisonment as provided in § 34 of this title.

2. At the outset it is noted that the parties hereto have consented to a decision by this court of the underlying question as to whether the conduct charged in the substantive offense affected interstate commerce, as opposed to its submission to a jury. *United States v. Barton*, 647 F.2d 224, 231 n. 7 (2d Cir. 1981); *United States v. DiFrancesco*, 604 F.2d 769, 775, 776 (2d Cir. 1979), rev'd on other grounds, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) on remand 658 F.2d 33 (2d Cir. 1981); *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). *See United States v. Calder*, 641 F.2d 76 (2d Cir.) (Hobbs Act), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981); *United States v. Ricciardi*, 357 F.2d 91, 94 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966).

3. The government proposes that the following instructions be given:

It is not necessary for you to find that the defendants knew the piano store was used in interstate commerce or in activities affecting interstate commerce, nor is it necessary for you to find that the defendants by their actions sought to affect or obstruct interstate commerce; it is only necessary that you find that had the facts been as the defendants thought them to be, that is, had the piano store been real instead of fictitious, there is a realistic probability that the store would have been used in interstate commerce or in activities affecting interstate commerce. It is not a defense to this charge that the commission of the underlying crime, that is the destruction of the piano store, would have been impossible because the store did not exist. The crime charged is conspiracy to damage and destroy the store. If you find beyond a reasonable doubt that the conspiracy alleged in the indictment was wilfully formed, and that the defendants wilfully became members of the conspiracy either at its inception or thereafter and that during the conspiracy one or more of the conspirators knowingly committed one or more overt acts charged in furtherance of some object or purpose of the conspiracy, then there may be a conviction even though the conspirators may not have succeeded in accomplishing their common object or purpose and even though the object or purpose of the conspiracy was impossible to carry out.

cuted three arsons in the last four months and was planning to "blow up" a supermarket in the near future. After expressing a desire to commit the "arson" for a fee, Giordano asked where the piano store was located. The informant, thinking of a real piano store that he knew, mentioned a location in Queens. After further discussions regarding the specifics of the crime, the two men parted.

Prior to the next scheduled meeting, the FBI and the United States Attorney in an apparent attempt to protect innocent life and property decided to have the informant substitute the identity of a fictitious piano store rather than a real one. To this end, the FBI fabricated the name Pianos, Incorporated, with an address slightly different in location from the real piano store discussed during the April 20th meeting.

At an April 22, 1981 meeting, the informant told Giordano that, before going ahead with the deal, he would have to meet Giordano's partner to make sure that the "arson" was in competent hands. Giordano agreed to try to have the informant meet with his partner, and on April 23, 1981, the informant met with Giordano and his partner "Benny", the defendant Guadagni. After a short discussion, Giordano and Guadagni agreed to destroy the "piano store", and the informant gave the defendants the name and address of Pianos, Incorporated, the fictitious piano store. Shortly after their meeting with the informant on April 23rd, the defendants were arrested.

At the outset it is noted that the court is not concerned with the merits of the conspiracy, but rather with the power of the court to consider the merits of that crime. The issue focuses directly on the limits of federal involvement in such crimes, i.e., whether a conspiracy to destroy a fictitious piano store has a sufficient nexus with interstate commerce to be subject to prosecution in federal courts.

The government's power to prosecute an individual for conspiracy to accomplish something factually unattainable is not at issue in the case at bar. *See United States v. Feola*, 420 U.S. 671, 693, 95 S.Ct.

1255, 1268, 43 L.Ed.2d 541 (1975); *United States v. Rabinowich*, 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). However, when the government seeks to indict for conspiracy under federal law, the link to federal jurisdiction must be identified if this court is to exercise its power. In *United States v. Feola*, the court discussed this requirement in the context of an assault on a federal officer. In dicta the *Feola* court noted that:

> Federal jurisdiction always exists where the substantive offense is committed in the manner therein described, that is, when a federal officer is attacked. Where, however, there is an unfulfilled agreement to assault, it must be established whether the agreement standing alone, constituted a sufficient threat to the safety of a federal officer so as to give rise to federal jurisdiction. If the agreement calls for an attack on an individual specifically identified, either by name or by some unique characteristic . . . and that specifically identified individual is in fact a federal officer, the agreement may be fairly characterized as one calling for an assault upon a federal officer, even though the parties were unaware of the victim's actual identity and even though they would not have agreed to the assault had they known that identity. Where the object of the intended attack is not identified with sufficient specificity so as to give rise to the conclusion that had the attack been carried out the victim would have been a federal officer, it is impossible to assert that the mere act of agreement to assault poses a sufficient threat to federal personnel and functions so as to give rise to federal jurisdiction. 420 U.S. at 695–96, 95 S.Ct. at 1269.

In the instant matter, the link to federal jurisdiction is the interstate commerce clause. However, the specific link to federal jurisdiction as in *Feola* continues to be a necessary requisite for this court's power to act over this conspiracy. Thus, in order to assert federal jurisdiction, the connection with interstate commerce under Section

844(i) must be specifically identified. In that Section 371 has no jurisdictional requisites of its own, the court must focus on the jurisdictional requisites for the substantive crime in Section 844(i). In light of the limited, clear-cut jurisdictional focus of Section 844(i), proof of any possible interstate character of a fictitious piano store is irrelevant. The basis for exercising jurisdiction according to *Feola* must be concrete, not imaginary or hypothetical. Thus, after analyzing the jurisdictional requisites along with the facts herein, this court concludes that there can be no conspiracy to maliciously damage or destroy a building in interstate commerce under sections 844(i) and 371 because the fictitious nature of the piano store defies proof of its link to interstate commerce.

In *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Supreme Court analyzed Congress' power to regulate interstate commerce. *Perez* was a loan-sharking prosecution under 18 U.S.C. § 891, in which defendants challenged the extent of Congress' regulatory power under the commerce clause. In its analysis, the Supreme Court delineated three categories of commerce clause jurisdiction:

> The Commerce Clause reaches in the main, three categories of problems. First, the use of channels of interstate or foreign commerce which Congress deems are being misused, as, for example, the shipment of stolen goods (18 U.S.C. §§ 2312–2315) or of persons who have been kidnapped (18 U.S.C. § 1201).

Second, protection of the instrumentalities of interstate commerce, as for example, the destruction of an aircraft (18 U.S.C. § 32), or persons or things in commerce, as for example, thefts from interstate shipments (18 U.S.C. § 659S). Third, those activities affecting commerce. It is with this last category that we are here concerned. *Perez v. United States*, 402 U.S. 146, 150, 91 S.Ct. 1357, 1359, 28 L.Ed.2d 686 (1971).

Only a statute which covers all three categories exercises "the full jurisdictional reach" of Congress' commerce clause power that is constitutionally permissible. *See United States v. Mennuti*, 487 F.Supp. 539, 543 (E.D.N.Y.1980), *aff'd*, 639 F.2d 107 (2d Cir. 1981). In *Mennuti*, the Second Circuit held that Section 844(i) is a "category two" statute as defined in *Perez*, and applies only to the destruction of interstate property. The court rejected the Congressional history behind § 844(i)[4] which apparently intended to give the statute the full breadth of federal jurisdiction by significantly limiting the interstate activity covered by § 844(i):

> The critical word here is "used." Congress did not define the crime described in 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce as we assume it could constitutionally have done.... It chose to require that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce.

---

4. The legislative history with respect to Section 844(i), notably the House Report, No. 91–1549, Organized Crime Control Act of 1970) U.S. Code Cong. & Adm.News, p. 4007, states the following:

> Section 844(i) proscribes the malicious damaging or destroying, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Attempts would also be covered. Since the term affecting (interstate or foreign) "commerce" represents "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," *NLRB v. Reliance Fuel Corp.*, 371 U.S. 224, 83 S.Ct. 226, 312, 313, 9 L.Ed.2d

279 (1963), this is a very broad provision covering substantially all business property. While this provision is broad, the committee believes that there is no question that it is a permissible exercise of Congress (sic) authority to regulate and to protect interstate and foreign commerce. Numerous other Federal statutes use similar language and have been constitutionally sustained in the courts. *See,* Labor Management Relations Act, 29 U.S.C. 401 *et seq.*: Civil Rights Act of 1964 (equal opportunity provisions), 42 U.S.C. 2000 *et seq.*: Consumer Credit Protection Act (truth in lending provisions), 15 U.S.C. 1601 *et seq.* and (loan sharking provisions), 18 U.S.C. 891 *et seq.* (1970) U.S.Code Cong. & Adm.News at 4046–4047.

Thus, Section 844(i) exercises commerce clause jurisdiction only over property having a direct, concrete connection with interstate commerce. With the jurisdictional predicate under section 844(i) being the *property* used in an activity affecting interstate commerce, *see United States v. Barton,* 647 F.2d 224 at 233 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 307, 70 L.Ed.2d 152, (1981), it is the government's burden to prove every element of the offense, including the interstate nature of the property targeted in the alleged arson conspiracy. In its attempt to do so, the government asserts that the "realistic probability" that the fictitious piano store would have affected interstate commerce is sufficient to bring the conspiracy within federal jurisdiction. However, even accepting the "realistic probability" standard, the cases cited in their brief do not directly support their proposition.

Unlike the case at bar, the cases cited by the government refer to the jurisdictional reach of the Hobbs Act, 18 U.S.C. § 1951, which covers anyone who "in any way or degree ... affects commerce ... by ... extortion or attempts or conspires so to do...." In *United States v. Staszcuk,* 517 F.2d 53, 58 (7th Cir.) (en banc), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), a local alderman was convicted of a substantive violation of § 1951. The government had proven that he received $3000 and that he did not oppose a zoning change which authorized the construction of an animal hospital. However, the hospital was never built. The court noted that "there is no evidence that either the zoning change or the payment had any effect whatsoever, either favorable or unfavorable, on interstate commerce." *Id.* at 55. Judge, now Justice Stevens, writing for a majority of the en banc court, concluded: "We are ... persuaded that the cases which uniformly hold that a threatened effect on interstate commerce is sufficient to bring the statute into play notwithstanding

the absence of any actual effect, correctly interpret the congressional purpose." *Id.* at 59. In *Staszcuk,* the nexus between the extortion and interstate commerce was described by the court as follows: "the extortion eliminated the alderman's possible opposition to the removal of a restriction which prevented ... building the hospital; if (plans were not changed), the construction of the hospital would have involved the use of out-of-state materials." *Id.* at 56.

In its interpretation of the jurisdictional nexus required to establish a section 1951 violation, the court in *Staszcuk* focused on the third category of activity defined in *Perez,* namely "activity affecting commerce," and that link to interstate commerce was clearly identified. Taking note of the federal interest in deterring even futile threats to interstate commerce, the court found that "jurisdiction in the particular case is satisfied by showing a realistic probability that an extortionate transaction will have some effect on interstate commerce" as measured from the time of the offense. *Id.* at 60.

▮ To the contrary, the Second Circuit in *Mennuti* held that the jurisdictional nexus required to establish a section 844(i) violation does *not* focus on the actual criminal acts, but on the interstate character of the subject property under *Perez* category two. In the case at bar, the government seeks to offer the testimony of two persons engaged in the manufacture of pianos to show that "no piano can be made entirely from materials within New York State to establish that a piano by its very nature is an article of interstate commerce and cannot be otherwise."[5] (Government brief p. 12) However, in light of the narrow, clear-cut jurisdictional focus of Section 844(i) as a *Perez* category two statute, proof of the interstate character of a fictitious piano store is irrelevant as its link to interstate commerce cannot be sufficiently identified. The basis of this court's exercise of jurisdiction must be concrete, not imaginary or hypothetical.

---

**5.** The government proffers this testimony to establish that there are at least five components of a piano which cannot be obtained in New York State, and that to manufacture any

piano in New York State, materials and component parts would have to be shipped across state lines.

In further illustration of the different jurisdictional nexus required for a section 1951 violation are the cases *United States v. Rindone*, 631 F.2d 491 (7th Cir. 1980) and *United States v. Brooklier*, 459 F.Supp. 476 (C.D.Cal.1978). In *Rindone*, the Section 1951 Hobbs Act conviction of a municipal inspector who had extorted money in exchange for work permits was challenged on the ground that there was no nexus with interstate commerce under the depletion of assets theory [6] because the Federal Bureau of Investigation had supplied the money used in the extortionate transaction. The court upheld the conviction under Section 1951 for affecting interstate commerce and attempting to do so, concluding:

> As the court noted in *United States v. Brooklier, supra*, "[t]his extortion completed a plan that would have actually affected commerce but for a fact unknown to defendants, i.e., that [the victim] was a company not actually engaged in commerce." *Id.* at 478. The presence here of a fact not known to Rindone, i.e., that the FBI provided the payoff money, is likewise irrelevant to the jurisdictional inquiry.

631 F.2d at 494. In *Brooklier*, the defendants extorted payments from an FBI-created shell corporation. Unbeknownst to the defendants, the victim corporation in fact had no interstate dealings and the extortion had no actual effect on interstate commerce. However, Hobbs Act jurisdiction under Section 1951 was upheld in light of the court's interpretation of Congressional intent:

> Congress apparently intended the Hobbs Act to reach all activities that could be characterized as extortions or attempted extortions from businesses. The language of § 1951 is very broad, and subsection (b)(3) makes it clear that Congress intended the section to apply to all acts of extortion over which it might exercise

jurisdiction. It therefore appears that Congress had the power and the intent to proscribe attempted obstruction of interstate commerce by extortion....

459 F.Supp. at 483. Thus, while the "class of activities" (*see Perez v. United States, supra*) regulated by Congress under its commerce clause power in Section 1951 is broadly construed as the link to federal jurisdiction is easily attained once the crime is in motion, the Second Circuit has narrowly construed the "class of activities" regulated by Congress under Section 844(i).

As noted, the government in the present case, argues that, as in the above mentioned cases, the focus must be placed on the potential effect of the defendants' actions in determining if federal jurisdiction exists. The government states that the jury must be asked to assess the "realistic probabilities" that had the piano store been as the defendants conceived it, it would have been used in interstate commerce or in activities affecting interstate commerce. However, the Second Circuit in *Mennuti* clearly identified the jurisdictional nexus requirement of Section 844(i) as "property currently used in commerce or in an activity affecting it." *United States v. Mennuti, supra* at 113. Therefore, unlike those federal prosecutions under Section 1951 to which the government cites, the interstate commerce nexus of the instant prosecution is the *property* threatened with damage or destruction.

In light of that requirement, this court cannot accept the invocation of its jurisdiction based solely upon the evidence supplied by the silent mental operation of the minds of government agents.

*Feola* mandates a degree of specificity with which the defendants' conspiratorial agreement must be drawn to show the link to federal jurisdiction. In addition, *Perez* and *Mennuti* require that the terms to be specifically identified must pinpoint the property allegedly possessing an interstate

---

**6.** In substantive Hobbs Act convictions, the requisite nexus to interstate commerce has been found in the depletion of assets theory, because payment of an extortion demand may reduce the assets available for the purchase of goods originating in other states. *See*, e.g., *United States v. Cerilli*, 603 F.2d 415, 424 (3rd Cir. 1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980), *United States v. Addonizio*, 451 F.2d 49, 77 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

character. Thus, the issue is not whether the defendants' perceptions can invest the court with federal jurisdiction because of a reasonable threat to interstate commerce, but whether the alleged conspiracy to damage or destroy an unidentified, fictitious piano store constitutes a link to interstate commerce so as to implicate the category two area of federal concern under *Perez* sufficient to give rise to federal jurisdiction under Section 844(i). This court concludes that it is not. In light of the Second Circuit's ruling in *Mennuti*, this court holds that, absent a specific, identifiable parcel of property which was the target of the conspiracy, there is no sufficient link under section 844(i) to bring this crime within the ambit of federal jurisdiction.

Accordingly, Count Seven of the superceding indictment is hereby dismissed.

SO ORDERED.