UNITED STATES of America,
Plaintiff/Appellee,

v.

Garrison M. EVERETT and Richard I.
Chira, Defendants/Appellants.

Nos. 81–1532, 81–1589.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1982.

Decided Nov. 15, 1982.

Certiorari Denied March 28, 1983.
See 103 S.Ct. 1498, 1502.

* The Honorable Roger Robb, United States Circuit Judge for the Court of Appeals for the District of Columbia, sitting by designation.

Mark O. Heaney, Heaney, James & Hearn, Los Angeles, Cal., for Chira.

Bruce I. Hochman, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for Everett.

Rick M. Flam, Sp. Asst. U.S. Atty., Los Angeles, Cal., for United States.

Appeal from the United States District Court for the Central District of California.

Before ANDERSON, PREGERSON, and NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants Everett and Chira appeal their convictions for conspiracy to impair, impede, and obstruct the Department of the Treasury in the collection of tax revenue in violation of 18 U.S.C. § 371.[1] A jury found appellants guilty of conspiring to sell tax shelter investments that had been backdated to allow the buyers to claim deductions on their federal income tax returns for years prior to those in which the transactions actually took place.

The government's evidence at trial consisted primarily of the testimony of an undercover IRS agent who answered an advertisement in a newspaper offering tax shelter investments and was referred to appellant Everett's firm, Intervest Associates, Inc. The agent posed as the representative of a wealthy resident alien who

wanted to shelter 1980 and 1981 income. The agent met with Everett, appellant Chira and two others from Intervest to discuss general tax strategies. After this initial meeting, the agent met or spoke with Everett eight times and with Chira three times to plan a tax strategy to shelter income for both 1980 and 1981.

In March 1981, the agent asked Everett about sheltering between $150,000 and $180,000 that his fictitious client had received in taxable income for 1980. Everett told the agent that he could create a tax shelter for 1980, even at such a late date, by backdating the necessary documentation.

After further discussions, Everett and the agent agreed on a plan to generate an $83,000 1980 tax write-off for the agent's client by combining a sale/lease-back of a Rolls Royce owned by appellant Chira and a computer sale/lease-back transaction.

On April 16, 1981, the agent met both Chira and Everett at the Intervest offices to complete the computer and Rolls Royce transactions. Appellant Chira signed a conditional sales contract for the Rolls which was backdated to December 22, 1980. The agent received a number of documents relating to both transactions signed by Everett, Chira, and Roberta Mackey[2] backdated to December 22, 1980. All documents signed by Everett and Chira were signed in the agent's presence on April 16, 1981 and dated December 22, 1980. After the signing of the documents, the agent gave appellants $45,000 as down payment and lease payments on the automobile and the computer. Finally, the agent, Chira and Everett went to the parking garage to inspect the Rolls Royce, at which time Chira and Everett were arrested.

1. 18 U.S.C. § 371 provides, in part:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years or both.

2. Roberta Mackey was an Intervest employee who acted as a "trustee" for Intervest's clients in tax shelter transactions. Here, Ms. Mackey purchased the computer equipment and the Rolls Royce in trust for the fictitious taxpayer and signed a Trust and Fiduciary Agreement which was used to create the false impression that both the computer and the automobile tax shelters were complete in 1980.

Ms. Mackey testified at the trial in return for immunity.

A grand jury indictment was returned charging Chira, Everett, and Intervest Associates, Inc. with conspiracy to defraud the United States by impairing, impeding, and obstructing the IRS in the collection of tax revenue.

*Legal Impossibility*

Both appellants assert that their convictions should be reversed on the grounds of legal impossibility. Appellants argue that it was legally impossible for them to impede the collection of taxes because there was no real taxpayer nor any actual tax due, and because the government had knowledge of the scheme.

Two responses defeat appellants' assertions. First, the charge of conspiracy to impede the collection of taxes does not require the filing of a tax return by a real taxpayer. Second, the doctrine of legal impossibility is not available as a defense to a charge of conspiracy in this circuit.

■■■ A conspiracy to defraud the United States under 18 U.S.C. § 371 need not involve an agreement to defraud the government out of money or property, but only requires an agreement to impede the government's lawful functions. Section 371 does not require that the government actually be harmed; it reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government." *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) quoting *Haas v. Henkel,* 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910). In the instant case, the purpose of the conspiracy was to impede the lawful function of the IRS, that is, the collection of taxes, and the existence of a real taxpayer is therefore immaterial.

■■■ Furthermore, this court has rejected the doctrine of legal impossibility as a defense to a charge of conspiracy. Appellants compare their case to *Ventimiglia v. United States,* 242 F.2d 620 (4th Cir.1957), in which the Fourth Circuit held that there can be no conspiracy to commit a crime when it is legally impossible to commit the underlying substantive offense. Appellants argue that

there is Ninth Circuit support for the legal impossibility doctrine of *Ventimiglia* in *Lubin v. United States,* 313 F.2d 419 (9th Cir.1963).

Appellants' reliance on *Lubin* is misplaced. *Lubin* did not in fact involve a defense of legal impossibility. In that case, the crucial issue was whether the alleged action constituted a federal offense. The defendants had been convicted of a conspiracy to steal property belonging to banks. That conviction was reversed because the money in the armored truck that the defendants conspired to rob did not in fact belong to a bank. The court found that, although the robbery scheme was a taking punishable by state law, the crime was not within the federal statute:

> This would be an offense under the laws of California .... It would be a federal offense only if the objective was to take "property or money * * * belonging to" a federally protected bank ..., and the crucial question is whether the evidence shows such a conspiracy.

*Lubin,* 313 F.2d at 420.

In fact, this court does not follow the Fourth Circuit's decision in *Ventimiglia.* In *United States v. Sanford,* 547 F.2d 1085 (9th Cir.1976), we rejected legal impossibility as a defense to a charge of conspiracy to transport in interstate commerce animals killed in violation of federal law. The appellees were charged with substantive violations of federal hunting laws and with conspiracy. They had acted as guides for a hunting expedition during which game was killed by undercover federal agents. The district court dismissed the substantive and conspiracy counts because the killing of the animals had been "authorized" by the federal government and was not therefore in violation of the law. On appeal, we rejected the legal impossibility defense:

> The district court dismissed this [conspiracy] count on the ground that appellees cannot be charged with conspiracy to commit a substantive crime when the scheme, if completed, does not constitute an offense against the United States. We disagree. Apart from the ultimate

disposition of the substantive counts of the indictment charging interstate transportation of illegally killed animals, "the crime of conspiracy is complete upon the agreement to violate the law, as implemented by one or more overt acts . . . , and is not at all dependent upon the ultimate success or failure of the planned scheme." (Citations omitted.)

547 F.2d at 1091. *See United States v. Thompson*, 493 F.2d 305 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974).

In *United States v. Brooklier*, 459 F.Supp. 476 (C.D.Cal.1978) (Pregerson, D.J.), the court closely examined the precedent on legal impossibility as a defense to a charge of attempt. The court stated that "it is well-settled in this Circuit that impossibility is not a defense to a charge of *conspiracy* to commit an offense." 459 F.Supp. at 481 (emphasis in original). Exploring then the issue of impossibility as a defense to an attempt, the court concluded that Fifth Circuit precedent regarding legal impossibility should be followed:

> The Fifth Circuit's standard, which requires objective acts to unequivocally corroborate the necessary criminal intent, properly accommodates the concerns underlying the conflicting views on the impossibility defense. Such an accommodation safeguards both the government's interest in deterring criminal conduct and the citizen's right not to be injured by "possible erroneous official conclusions about his guilty mind." (Citations omitted.)

459 F.Supp. at 482.

█ The conclusion of *Brooklier* was later adopted by this court in *United States v. Bagnariol*, 665 F.2d 877 (9th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). We therefore require significant objective acts to corroborate unequivocally the criminal intent in a conspiracy, but disregard the legal possibility or impossibility of achieving a criminal result. *Bagnariol* involved convictions for violations of federal law against corruption, extortion, and gambling. One appellant ar-

gued that the requisite impact on interstate commerce was lacking because the entity he attempted to extort was a fictitious organization created by undercover FBI agents. We stated that "[t]he analysis in *Brooklier* disposes of [appellant's] impossibility defense." 665 F.2d at 896.

Finally, in *United States v. Duz-Mor Diagnostic Laboratory, Inc.*, 650 F.2d 223 (9th Cir.1981), we referred to the legal impossibility defense as "nonsense." Appellants were convicted of offering to pay kickbacks for the referral of medical services reimbursable from Medicare and Medi-Cal funds. Appellants argued that the violations were impossible of commission because the facilities and the owners of the facilities to whom appellant allegedly offered kickbacks were fictitious entities created by undercover FBI agents. We flatly rejected the defense:

> Duz-Mor contends that the government failed to prove a "jurisdictional prerequisite" to [the] violations because the rebate offer was made to an F.B.I. informant who could not in fact refer . . . Medicare and Medi-Cal services [that were] reimbursable from federal funds. This argument is nonsense.

650 F.2d at 227, n. 5.

█ Both appellants assert a second legal impossibility defense on the grounds that there can be no conviction for conspiracy to defraud the government when the government has knowledge of the scheme. Appellants rely on *United States v. Berrigan*, 482 F.2d 171 (3rd Cir.1973), in which the defendants were convicted of an attempted violation of 18 U.S.C. § 1791 for smuggling letters into a federal prison without the knowledge and consent of the warden. The warden in fact knew of the letters. The Third Circuit reversed the convictions on the grounds that, since the substantive offense was not in fact committed, the defendants could not be convicted of an attempt to commit the offense.

However, *Berrigan* is considered a minority view on the issue of legal impossibility and "most courts and commentators have not adopted the *Berrigan* approach."

*Brooklier,* 459 F.Supp. at 480. Clearly, this court has rejected *Berrigan.* *See Bagnariol* and *Sanford, supra.*

### Government Misconduct

Appellant Chira contends that the district court erred in denying his motion to dismiss the indictment on the grounds of government misconduct. Chira claims several inaccuracies in the presentation of his case, including misinformation in the affidavit of probable cause submitted in support of the complaint, misidentification of him as "Joseph" rather than Richard Chira on both the arrest warrant and complaint, and excessive and unnecessary use of hearsay testimony before the grand jury.

 None of these alleged inaccuracies approaches the level of government misconduct necessary to violate the due process clause or to justify an exercise of the supervisory power of the court. Under its inherent supervisory powers, a federal court is empowered to dismiss an indictment on the basis of governmental or prosecutorial misconduct. *United States v. Owen,* 580 F.2d 365, 367 (9th Cir.1978). However, such supervisory power will be used to dismiss an indictment only when the misconduct represents "a serious threat to the integrity of the judicial process." *United States v. Samango,* 607 F.2d 877, 885 (9th Cir.1979). The violations alleged by appellant Chira do not rise to this level. Therefore, the district court did not err in rejecting his motion to dismiss.

### Hearsay Testimony

 Appellant Chira contends that the district court erred in admitting the testimony of Roberta Mackey regarding an alleged telephone conversation between Intervest employee Ronald Nachtwey and Chira. Ms. Mackey testified that she overheard a conversation between Nachtwey and Chira tending to show that Chira had knowledge of and prepared the backdated Trust Agreement admitted as Exhibit 8 at trial.

The district court admitted this hearsay testimony under the coconspirator admission exception, Fed.R.Evid. 801(d)(2)(E)[3], on the grounds that Nachtwey was acting as an agent of the indicted coconspirator, Intervest Associates, Inc. This evidentiary ruling was not reversible error. Nachtwey was a target of investigation in the case and was sufficiently connected to the conspiracy to qualify as an unindicted coconspirator for the purpose of Rule 801(d)(2)(E). In addition, even if the hearsay was erroneously admitted, the error was harmless because there was additional direct testimony from Ms. Mackey showing appellant Chira's knowledge of and preparation of the subject Trust Agreement.

### Sufficiency of the Evidence

Appellant Chira contends that the evidence presented at trial was insufficient to support his conviction for conspiracy. However, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of the conspiracy. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 The elements of the conspiracy offense are an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying offense. *United States v. Oropeza,* 564 F.2d 316, 321 (9th Cir.1977). In the instant case the underlying offense was defrauding the United States. Although there was ample evidence of his participation in the backdated tax shelter transaction, appellant Chira argues that the evidence of his intent was insufficient. However, it is well-settled that such intent may be inferred. *United States v. Melchor-Lopez,* 627 F.2d 886, 891 (9th Cir. 1980). In the instant case, the jury could

---

**3.** Federal Rule of Evidence 801(d)(2)(E) provides:

 (d) A statement is not hearsay if—

 . . . . .

 (2) The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

have inferred from the evidence presented that Chira intended to agree with Everett and others to impede the collection of taxes.

In sum, the district court did not err in rejecting the defense of legal impossibility, because legal impossibility is not a defense to a charge of conspiracy. The district court did not err in rejecting appellant Chira's motion to dismiss nor in admitting Ms. Mackey's hearsay testimony against Chira. The evidence presented at trial was sufficient to sustain Chira's conviction for conspiracy.

Therefore, the judgment of the district court is AFFIRMED.